**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**MATTHEW FARLEY** **PLAINTIFF**

**VS.** **No. 4:26-cv-00080 LPR/PSH**

**FRANK BISIGNANO, Commissioner,**
**Social Security Administration** **DEFENDANT**

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court Clerk within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

Plaintiff Matthew Farley ("Farley") appeals the final decision of the Commissioner of the Social Security Administration (defendant "Bisignano") to deny his claim for Supplemental Security Income ("SSI"). Farley contends the

Administrative Law Judge ("ALJ") erred in three ways: (1) by "playing doctor" and formulating a residual functional capacity ("RFC") without any supporting medical opinion, where the state agency consultants found the evidence insufficient to assess the claim and no acceptable medical source rated his functional capacity; (2) by finding Farley's anxiety and depression "well controlled" while disregarding the longitudinal mental-health record; and (3) by failing to consider the type, dosage, effectiveness, and side effects of Farley's medications in assessing his RFC.

The parties ably summarized the medical records and the testimony given at the telephonic administrative hearing, which was conducted on October 17, 2024. (Tr. 29-42). The Court has carefully reviewed the record to determine whether there is substantial evidence to support Bisignano's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from March 31, 2022, when the application was filed,[1] through December 5, 2024, the date of the ALJ's decision. (Tr. 12-28). The undersigned recommends dismissal of the complaint.

*The Administrative Hearing:*

Questioned by his attorney, Farley, aged 53, explained a barrier to employment – "when it comes to workin' and just being able to communicate with other people, I have a real hard time doin' it." (Tr. 33). Farley voiced problems

[1] Farley alleged disability beginning on February 9, 2016.

with being in public, and traced communication problems to PTSD, being assaulted as a child, and being incarcerated in a maximum security setting. He described isolating himself in his home, which he equipped with a gate, signs, cameras, and motion sensors. He stated he was recently divorced.

Farley stated "I don't trust nobody" and he experienced anxiety attacks and bad dreams "all the time." (Tr. 35-36). He noted he had no contact with family members except for his mother and brother.

Farley, who admitted a history of substance abuse, stated his current medical issues are addressed by medical marijuana and prescribed medication. In particular, he cited Alprazolam as helping with sleep. Even so, he indicated he still has nightmares and the medication "only helps so much." (Tr. 39).

Farley described other issues, stating he has ADD and gets overwhelmed. He also mentioned COPD and asthma, for which he takes Singular daily and uses an inhaler almost daily. He cited struggles with neuropathy, walking and getting around – "my feet are numb all the time." (Tr. 38). He admitted he would have trouble walking from his home to town, a distance of three miles.

Kola Brown ("Brown"), a vocational expert, testified. First stating that Farley had no past relevant work, the ALJ asked Brown to consider a hypothetical worker of Farley's age, education, and experience, who could perform light work with the following restrictions: no climbing of ladders, ropes, or scaffolds;

occasional crouching; no exposure to unprotected heights or hazards like dangerous moving machinery or uneven walking surfaces; no exposure to pulmonary irritants; can understand, remember, and carry out detailed but not complex instructions; can engage in occasional interaction with co-workers or the public; and can occasionally adapt to changes in a routine work setting. Brown testified that such a hypothetical worker could perform the jobs of production assembler, marker, and inspector and hand packager.

If the hypothetical worker were on task less than 90% of the workday, Brown stated the listed jobs would not be available.

*The ALJ's Decision*

Following the administrative hearing the ALJ, in his December 5, 2024 decision, determined Farley had the severe impairments of asthma, peripheral neuropathy, generalized anxiety disorder, and post-traumatic stress disorder ("PTSD"). The ALJ found the following as medically determinable impairments which were not severe: hypertension; hyperlipidemia; hypercholesteremia; vitamin D deficiency; history of acute COVID infection; obesity; and onychomycosis of toenails.

The ALJ found Farley did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ specifically addressed whether

Farley met Listings 3.03 (asthma), 1.14 (peripheral neuropathy), and 12.06 and 12.15 (mental impairments). As part of the analysis of mental impairments the ALJ considered the "paragraph B" criteria, rating Farley in four broad areas of functioning, finding he had: (1) a mild limitation in understanding, remembering or applying information; (2) a moderate limitation in interacting with others; (3) a moderate limitation with regard to concentrating, persisting or maintaining pace; and (4) a moderate limitation in adapting or managing oneself. Since Farley was not markedly limited in two of these areas, or extremely limited in one area, the "paragraph B" criteria were not satisfied.

The ALJ determined Farley had the RFC to perform light work with the restrictions which mirrored those in the hypothetical question posed to Brown. The ALJ reviewed Farley's testimony at the administrative hearing. Citing the appropriate factors from SSR 16-3p, the ALJ determined Farley's impairments could reasonably be expected to cause his symptoms. However, the ALJ found his statements regarding the intensity, persistence and limiting effects were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 20).

The ALJ considered Farley's medical history, beginning with his May 2022 visit to Conway Regional Health System complaining of dizziness and anxiety. Mental health issues were noted, and the ALJ also noted the mental status

examination was "grossly normal." (Tr. 21, citing Tr. 325).

The ALJ also noted a January 2023 encounter at the Conway Regional Counseling Center where Farley reported he was irritable and his sleep was fair. The ALJ further noted that October 2024 treatment notes reflected that Farley's depression and anxiety were controlled on medications. (Tr. 21, citing Tr. 430).

The ALJ found Farley had neuropathy but not to the extent alleged, and pointed to a report of Farley helping a neighbor repair a trampoline. The ALJ observed Farley "remains independent in physically and mentally carrying out activities of daily living. Claimant prepares meals daily; he can do laundry and light cleaning. The claimant has a history of asthma and is obese." (Tr. 21).

The ALJ then addressed the opinion evidence. The ALJ deemed the opinion of Christina Adams, M.S., LPE-I, ("Adams"), claimant's counselor at Conway Regional Counseling Centers, not persuasive. The ALJ observed that Adams did not reference treatment notes to support her opinion, and that mental health notes showed Farley's depression and anxiety were controlled on medications.

The ALJ also found the opinion of Timothy S. Spurlin, MNSc, APRN, PMHNP-BC, ("Spurlin"), a treating provider, not persuasive. Again, the ALJ cited the inconsistencies between the October 2024 treatment note and Spurlin's opinion.

The ALJ discussed the four state agency consultants, finding that three of

these consultants did not provide a medical assessment or analysis to review, and the fourth consultant found there was no medically determinable impairment (MDI) established and therefore a consideration of symptoms in the case was not done.

The ALJ found Farley had no relevant past work. Relying upon the testimony of Brown, the ALJ found there were jobs in the national economy which Farley could perform. As a result, the ALJ found Farley was not disabled.

Before addressing the claims advanced by Farley, it is helpful to review the medical evidence from the relevant period, March 31, 2022, to December 5, 2024.[2]

May 12, 2022 -- Conway Regional Health System

Farley complained of anxiety and dizziness and indicated he was dealing with a variety of depression symptoms "nearly every day." (Tr. 321). He also complained of nausea, vomiting, pain in his feet, and vertigo. He was observed to be in tears, stated he had been sleeping well and admitted to using meth two weeks prior. On exam, he was observed to be cooperative and in no acute distress, with anxious mood, tearful, and his mental status was "grossly normal." (Tr. 325). The treatment plan to deal with his generalized anxiety disorder was to increase physical activity, contact a support group, avoid substance abuse ("stop using meth

[2] The treatment records pre-dating the relevant period from Conway Regional Counseling Center and from Greenbrier Family Medicine are not addressed.

immediately”), and resume social interaction. (Tr. 326). To deal with dizziness he was advised to take 150 mg. of gabapentin in the morning and afternoon and 600 mg. at bedtime for nerve pain. The diagnoses were generalized anxiety disorder, dizziness, fatigue, and neuropathy. (Tr. 321-328).

May 13, 2022 -- Conway Regional Medical Center laboratory test report with results from May 12 samples. (Tr. 355-362).

June 22, 2022 -- Conway Regional Therapy’s response to a request to provide medical records from March 31, 2021. The response – “No therapy records found for this patient.” (Tr. 371).

October 14, 2022 – Greenbrier Family Medicine’s response to provide medical records from May 14, 2022. The response – “No dates of treatment as requested.” (Tr. 380).

December 19, 2022 – Treatment records from Greenbrier Family Medicine. Farley complained of an upper respiratory infection and neuropathy. The depressive symptoms Farley noted in May were no longer present (“not at all feeding down, depressed, or hopeless”). (Tr. 389). Farley, who was accompanied by his wife, tested positive for COVID-19. Farley explained he was around a sick neighbor helping to assemble a trampoline. He reported the gabapentin worked well when he took it with Xanax, but gabapentin alone was no longer working. He complained of numbness and pain in his feet but his oxygen levels were good at

99%. The notes also record that Farley's wife stated "he has been wearing a mask at work because someone came in with the flu." (Tr. 390). His wife also reported he was addicted to Alprazolam; he stated he had been on the same dose for a long time. Examination that day noted he was cooperative, with normal speech gait, congruent mood, normal affect, grossly normal mental status, and normal speech and movement. The plan going forward advised precautions related to COVID-19 (5-day dose of antiviral medication, rest, masking for 5 days). Gabapentin continued to be prescribed for foot pain. (Tr. 381-396).

November 8, 2022 to January 23, 2023 – Treatment records from Conway Regional Counseling Center. When seen on November 8, 2022 for psychiatric follow up and medication management, Farley reported he "has been doing well." (Tr. 409). He noted improvement after a recent argument with neighbors, denied any recent panic attacks, rated his sleeping as fair and his mood as stable. His mental exam showed him cooperative, talkative, oriented, with good insight and judgment. His progress was rated as good. Notes included "he is doing very well on amitriptyline" with no recent panic attacks, mood and sleep well controlled, and the plan going forward was to continue current medications. (Tr. 409-412).

Farley was irritable at his January 23, 2023, follow up appointment, in part because of issues with his neighbors (he stated he got COVID from one of the neighbors). He reported the neuropathy in legs and feet were affecting his life and

rated his sleeping as fair. The mental exam noted his mood as "pissy" and his affect as irritable. (Tr. 406). His behavior was cooperative, talkative but irritable, and his insight was fair, judgment was good, and his progress was fair. The plan was to continue with Xanax and amitriptyline and continue to encourage counseling. (Tr. 405-408).

April 11, 2024 - Conway Regional Counseling Center one-page medical opinion from Adams. Adams indicated she had treated Farley monthly since February 8, 2024, and opined his daily functioning was "significantly impacted" and his symptoms would "greatly impede his ability to perform job duties in a satisfactory manner." (Tr. 414).

May 16, 2024 – Conway Regional Counseling Center medical opinion from Spurlin. Among other things, Spurlin opined Farley had a marked limitation in his ability to interact with others and in adapting or managing himself. Spurlin, citing Farley's self-reports, also found a moderate limitation in maintaining concentration, persistence or pace which would affect his ability to perform work-like tasks on a continuous basis. Spurlin observed Farley's symptoms were only partially responding to medication. Spurlin indicated Farley had been under his care since November 2023 and was seen "roughly monthly." (Tr. 422). Spurlin opined that Farley's depression, anxiety, and PTSD would "most likely" have more than a minimal impact on his ability to perform work-like tasks. *Id.* (Tr. 415-423).

October 1, 2024 – Treatment records from a visit to Family First Primary Care. Farley reported that his last physical examination was more than a year prior. He listed his history of medical issues as acid reflux, asthma, high cholesterol, neuropathy, and mental health. He also noted toenail fungus. The notes reflect Farley stated his asthma was well-controlled with medication, his neuropathy was managed with gabapentin, topical arthritis cream, and alprazolam at night to help him sleep, and his hypercholesterolemia, although not checked in over a year and a half, was usually well-controlled. Farley also reported his depression and anxiety were "well controlled on current medications." (Tr. 430). His physical exam included a psychiatric component, where his mental status was "active and alert and normal mood." *Id.* His neurologic exam showed his cranial nerves were grossly intact. The plan going forward was to treat his impairments (hypertension, hyperlipidemia, peripheral neuropathic pain, asthma, and toenail infection) with medications, and he was to return to the office as needed. (Tr. 424-437).

*Claim One – the ALJ erred by "playing doctor" and formulating an RFC without any supporting medical opinion, where the state agency consultants found the evidence insufficient to assess the claim and no acceptable medical source rated his functional capacity.*

This first claim consists of two arguments.

First, he contends the ALJ failed to properly develop the record. Bisignano correctly describes the ALJ's duty is only to "develop a reasonably complete record." *See Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). And, critically, Farley bears the burden of proof to prove disability. *See Thomas v. Sullivan*, 928 F.2d 255 (8th Cir. 1991). The pertinent regulations provide that consultative examinations at government expense are discretionary and required only when necessary to enable the ALJ to make a disability determination. *See* 20 C.F.R. §§ 416.917, 416.919a(a).

Farley points to the state agency consultants and their responses (or lack thereof) and argues that the ALJ should have pursued additional evidence. Farley notes that three of the state experts, Drs. Clemens, Margiloff, and Santulli found there was insufficient evidence to evaluate the claim. As a result, the ALJ did not consider the persuasiveness of these state agency consultants. The only conclusion reached by any of the state agency experts (it is unclear if Dr. Santulli or Margiloff reached this decision, Tr. 54-55) is that a medically determinable impairment was not established and "therefore consideration of Symptoms Evaluation is not applicable to this claim." (Tr. 54).

Farley reasons that the ALJ's duty to obtain a consultative opinion "intensified" due to the ruling of the state consultants. Doc. No. 11, page 7. This is incorrect. Farley bears the burden of proving his disability. His choice to

provide little evidence to the state agency experts does not trigger the ALJ's obligation to obtain evidence on his behalf.[3] Farley cites *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) to support his argument that the ALJ's duty to obtain additional evidence was "intensified" when the state experts found there was insufficient evidence. *Barrett*, however, does not support his position. The Court there found the ALJ was not required to order additional tests and affirmed the decision of the Commissioner. *Barrett* does not stand for the proposition for which it was cited.

Farley was represented by counsel at the hearing. Counsel informed the ALJ that the record was complete. (Tr. 32). For the above reasons, the undersigned finds no error in the ALJ's consideration of the record before him and in not ordering further development of the record.

Second, Farley argues the ALJ formulated the RFC without any supporting medical opinion. This argument fails. It is correct that the ALJ did not cite a specific opinion and wholly adopt it as his RFC. He was not obligated to do so. There is no error because the RFC need not mirror the findings of any one physician, or one consultative examiner, as the ALJ is not bound to choose any one

[3] The state experts sought additional evidence from Farley, sending him a Function Report on October 23, 2023, and receiving no response. A Function Report was sent to Farley again on November 21, 2023, with no response. On December 19, 2023, Farley was contacted by phone and refused to fill out the forms. Farley's attorney was also asked to encourage him to complete the forms. (Tr. 51).

physician and adopt his/her findings as the appropriate RFC. Instead, it "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

Here, as previously detailed, the ALJ was supplied with the records of medical treatment during the relevant period and two opinions from medical professionals. These opinions were submitted in April and May of 2024, before end of the relevant period which ended in December of 2024. This is not an instance where the opinions given to the ALJ were outdated and left the ALJ uninformed. *See Kendrick v. Commissioner*, Case No. 4:24-cv-221 (all opinion evidence predated critical objective MRI findings). The *Kendrick* decision stressed that an ALJ must obtain "a modicum of RFC opinion evidence." The ALJ complied with this requirement, and he was not obligated to do more than he did under these circumstances. After considering the medical evidence and the opinions of Adams and Spurlin, the ALJ reached his RFC. He did his duty, the reasoning for his RFC decision is understandable, and there is no error in this regard.

*Claim Two – the ALJ erred by finding Farley's anxiety and depression were "well-controlled" while disregarding the longitudinal mental health record.*

Farley makes much of the ALJ's reliance upon the October 2024 treatment note where he reported his depression and anxiety were "well controlled on current medications." (Tr. 430). The ALJ cited this note on at least three instances in his decision – in his survey of the medical evidence and in his consideration of the opinions of Adams and Spurlin. (Tr. 21). Farley argues the citation of the October 2024 note runs counter to all of the other medical evidence and the ALJ "cherry-picked" this single notation. The October 2024 treatment note, however, did not stand alone in support of the ALJ's decision. In his review of the Paragraph "B" criteria and his review of the medical records, the ALJ notes other instances where Farley's mental health symptoms were encouraging and where his mental status was normal. As previously cited, Farley was reported to be "doing well" in November of 2022 and to being "not at all" being depressed in December of that year. (Tr. 409, 389). In addition, the October 2024 examination reflected a mental status which was "active and alert and normal mood." (Tr. 430).

Farley cites medical findings in support of his argument. By and large these findings pre-date the relevant period. For example, the findings are from July August, and October 2021, and February 2022, before the beginning of the relevant period in late March 2022. (Tr. 15, 23, 33, 35, 39). The records during the relevant

period are more persuasive and do not amount to "cherry picked" assessments.[4]

The ALJ's RFC did not hinge upon a medical record from October 2024 which ran counter to all of the other objective mental-health records. There is no error in the ALJ's consideration of the medical evidence during the relevant period.

*Claim Three – the ALJ failed to consider the type, dosage, effectiveness, and side effects of Farley's medications in assessing his RFC.*

It is well-settled that the ALJ cannot merely dismiss subjective allegations because they are not consistent with the objective medical evidence. The ALJ must consider other factors relevant to his symptoms. The relevant factors to be considered are found in SSR 16-3p and *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984):

> (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment a claimant uses or has used to relieve pain or other symptoms . . . ; and (7) any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. *See* SSR 16-3p.

---

[4] Farley also twice complains that the ALJ "imposed no mental health related limitations at all." Doc. No. 11, pages 12-13. This is incorrect, as the ALJ limited Farley in the following ways: can understand, remember, and carry out detailed but not complex instructions; occasional interaction with co-workers or the public; and occasionally adapt to changes in a routine work setting.

The ALJ is not required to explicitly discuss each relevant factor. *See Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005).

Farley cites *Medhaug v Astrue*, 578 F.3d 805 (8th Cir. 2009) and *Herring v. Colvin*, 2015 WL 143869 *4 (W.D. Ark. Jan. 12, 2015) in arguing that the ALJ failed to consider the side effects of his medications. *Medhaug* reinforces the ALJ's duty to consider the relevant factors, and notes the ALJ need not recite each factor mechanically. In *Herring,* the claimant testified at the hearing that she complained to her doctors of side effects, and the ALJ failed to properly evaluate them. These cases do not compel a conclusion that the ALJ did not consider side effects of medications Farley was taking.

In his January 22, 2024 Function Report, Farley listed the two medicines he was currently taking as Xanax and Abilify. He wrote that Xanax produced side effects of fatigue and forgetfulness, and insomnia was a side effect from Abilify. (Tr. 237). There was no testimony at the hearing about Xanax or Abilify, although Farley mentioned Alprazolam as assisting him, to a degree, with sleeping, and stated he was on an unnamed medication for neuropathy which "only helps so much." (Tr. 38). There was no testimony given regarding side effects of any medications. The medical records reflect no complaints of side effects. In May 2022, Farley reported vertigo, fatigue, vision changes and blurry vision. In October

2021, prior to the relevant period, Farley complained of dizziness, vertigo, and lightheadedness. He reported he was taking Omeprazole for acid reflux, and he listed numerous other medications he was taking. He did not state his symptoms were side effects of his medications. (Tr. 322, 329-330).

It is one thing to state, as Farley does, that known side effects of gabapentin/alprazolam/aripiprazole/amitriptyline are sedation, dizziness, and cognitive slowing. Doc. No. 11, page 15. It is another to suggest that the general existence of these side effects requires the ALJ to examine them. The lone reference to side effects in his Function Report did not require the ALJ to dwell on that issue. The ALJ, citing the objective medical evidence and activities of daily living, among other factors, found Farley's statements of his symptoms were not entirely consistent with the medical evidence and other evidence of record. Unlike the plaintiff in *Herring*, Farley neither testified about nor complained to his doctors about side effects. The ALJ was not compelled to discuss generally known side effects of medications in the absence of specific testimony or medical records documenting complaints. *See, e.g., Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016) (a lack of complaints to a treating physician detracts from a claimant's allegations of a disabling impairment).

*Conclusion*

In summary, substantial evidence supports the determinations reached by the ALJ. The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

Therefore, it is recommended that the final decision of Bisignano be affirmed and Farley's complaint be dismissed with prejudice.

IT IS SO ORDERED this 20th day of November, 2026.

______________________________
UNITED STATES MAGISTRATE JUDGE